UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MADISON THOMASSON,<br>                           Plaintiff,<br><br>    v.<br><br>STATE OF NEVADA EX REL. BOARD<br>OF REGENTS OF THE NEVADA<br>SYSTEM OF HIGHER EDUCATION, ON<br>BEHALF OF THE UNIVERSITY OF<br>NEVADA RENO,<br>                           Defendant. | Case No.: 3:25-cv-00611-MMD-CLB<br><br>ORDER |

## I.  SUMMARY

Plaintiff Madison Thomasson sued Defendant Board of Regents of the Nevada System of Higher Education ("Board of Regents") on behalf of the University of Nevada, Reno (the "University") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging a hostile work environment. (ECF No. 1 ("Complaint").) Before the Court is Defendant's motion to dismiss the Complaint.[1] (ECF No. 13 ("Motion").) As further explained below, the Court grants the Motion with leave to amend because Thomasson fails to state a short and plain statement showing she is entitled to relief and does not allege sufficient facts to state a claim.

## II.  BACKGROUND

The following facts are adapted from the Complaint (ECF No. 1). This action arises from a Title VII hostile work environment claim on the basis of sex, gender, race, and/or retaliatory hostility in connection with Thomasson's status as a graduate student and graduate teaching assistant in the Clinical Psychology Program within the University's Psychology Department. (ECF No. 1 at 3-4.) Thomasson began working for the University in August 2021 as a graduate teaching assistant and remained employed through June

---

[1]Plaintiff responded (ECF No. 18), and Defendant replied (ECF No. 26).

2025, excluding the summer terms of 2022 and 2023. (*Id.* at 4.) She alleges that, beginning in fall 2021, she experienced "race-based" and "gender-based" hostility from her supervisor, Dr. Mariann Weierich, including conduct that allegedly interfered with her academic research and progress within the program. (*Id.*) In particular, this conduct allegedly included withholding feedback on academic research, delaying research approvals, and otherwise limiting support necessary for her advancement in the program. (*Id.*)

Thomasson alleges that, in February 2022, the hostility "increased in frequency and intensity" shortly after she informed Dr. Weierich of her desire to join another faculty member's (Dr. Lorraine Benuto) clinical team.[2] (*Id.*) She further alleges that Dr. Weierich treated her less favorably than other certain classes of students (e.g., "white male graduate students"), including by denying funding opportunities to attend academic conferences and perform research, declining to accommodate scheduling conflicts, and providing less academic support overall. (*Id.* at 4-6.)

The Complaint describes additional incidents in 2022, including meetings during which Thomasson was subjected to "unjustified," "harsh," and "derisive" criticism, questioned about her "fitness" for the program, and accused of misconduct (i.e., "lying about being sick") by Dr. Weierich. (*Id.* at 6.) Thomasson subsequently reported her concerns of "discriminatory" and "retaliatory" racial animus to the University's Director of Clinical Training, Dr. Paul Kwon, and requested intervention and mediation, but alleges that no meaningful investigation or corrective action was taken. (*Id.* at 4, 6-7.)

In February 2023, Thomasson removed herself from Dr. Weierich's supervision and alleges that her ability to function in the program had been "materially impaired." (*Id.* at 12.) In March 2023, she filed a Title IX complaint with the University and further alleges

---

[2]The Complaint notes that Dr. Benuto is "of Hispanic and American Indian descent" and that Plaintiff "attributed the genesis of Dr. Weierich's hostility, in material part, to racial animus, arising as the result of plaintiff's racial lineage and/or Dr. Benuto's racial lineage." (ECF No. 1 at 4.) However, the Complaint does not further specify Plaintiff's "racial lineage" and leaves the Court guessing as to whether Plaintiff is also "of Hispanic and American Indian descent."

that the University failed to adequately investigate or respond. (*Id.* at 11.) Around the same time, Thomasson became aware of survey results reflecting complaints of race-based discrimination by other students in the program, which the University also failed to "thoroughly and fairly investigate." (*Id.* at 7-8.)

In February 2024, Dr. Weierich reported Thomasson to the University's Research Integrity Office for alleged academic misconduct, including "st[ealing] her research work-product, and us[ing] it as plaintiff's own." (*Id.* at 14-15.) Thomasson alleges that this report was "unfounded" and made in retaliation for her prior complaints of discrimination. (*Id.*)

The culmination of these events resulted in Thomasson filing this action. Although Thomasson appears to sue for retaliation, hostile work environment, and gender- and race-based discrimination, her claims are grouped together under a single cause of action against Defendant for hostile work environment. (*See id.* at 3.)

## III. DISCUSSION

Defendant moves to dismiss the Title VII claim under Federal Rule of Civil Procedure 12(b)(6), primarily arguing that Thomasson fails to allege sufficient facts to state a plausible hostile work environment claim. (ECF No. 13 at 7.) Thomasson counters that the Complaint adequately pleads the necessary facts. (ECF No. 18 at 2-3.) The Court agrees with Defendant.

To survive a motion to dismiss for "failure to state a claim upon which relief can be granted," a complaint must provide "a short and plain statement of the claim" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 12(b)(6), 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court then assesses whether the complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). A claim for relief is plausible when it contains either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (citation omitted).

3

Before addressing Defendant's Rule 12(b)(6) argument, the Court notes that the Complaint fails to satisfy Rule 8(a)'s requirement of a "short and plain statement" showing entitlement to relief. A complaint must be "simple, concise, and direct" so that a defendant may understand what they are being sued for, but, here, the Complaint is overly vague, ambiguous, and conclusory. *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (upholding a Rule 8(a) dismissal where a complaint was confusing and conclusory). As noted, Thomasson appears to assert claims for retaliation, hostile work environment, and gender- and race-based discrimination, yet groups all allegations under a single cause of action entitled "Title VII Hostile Work Environment– Sex/Gender/Race/Retaliatory Hostility." (ECF No. 1 at 3.) Thomasson, accordingly, fails to satisfy the Rule 8 standard.

Defendant argues that Thomasson fails to adequately state a claim of hostile work environment under Title VII because the Complaint, "despite its extraordinary length," is full of "irrelevant" and "conclusory" allegations. (ECF No. 13 at 7-9.) To prevail on a hostile work environment claim on either race or sex under Title VII[3], a plaintiff must show: "(1) that [s]he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," and "no single factor is required." *Harris v. Forklift Syst., Inc.*, 510 U.S. 17, 23 (1993) (referencing factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance") "Simple teasing," "offhand comments," and "isolated incidents" generally are insufficient

---

[3]Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

to constitute hostility. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that Title VII is not a "general civility code") (internal citation omitted).

Here, as Defendant notes, although Thomasson alleges a hostile work environment based on "sex/gender, race, and retaliatory hostility," the Complaint is deficient because it fails to identify specific instances of "verbal or physical conduct of a racial or sexual nature." (ECF No. 13 at 8.) Although the Complaint references preferential treatment allegedly afforded to "white male graduate students" (ECF No. 1 at 5), it does not plausibly allege conduct sufficiently "severe" or "pervasive" to support a hostile work environment claim based on race or gender. Moreover, the Complaint leaves the Court guessing as to whether Thomasson belongs to a protected racial class. And, to the extent the Complaint attempts to allege "retaliatory hostility" based upon protected activities, it fails to articulate any cogent theory regarding causation. (ECF No. 13 at 8.)

The Court thus finds the allegations conclusory and confusing and concludes that, taken alone, they do not plausibly allege Thomasson was subjected to conduct of a sexual or racial nature or a severe or pervasive environment altering the conditions of Thomasson's employment, and therefore fail to state a claim. Accordingly, Defendant's Motion is granted because Thomasson fails to state a short and plain statement showing she is entitled to relief and fails to allege sufficient facts to state a claim. Because the Court cannot find that amendment would be futile, the Court will grant leave to amend.[4] *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (district court has discretion to grant leave to amend and should freely do so "when justice so requires.").

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

---

[4]Plaintiff has not amended her Complaint, and she asked for leave to amend in her response, though she does not indicate how she would amend to state a claim. (ECF No. 18 at 23.)

It is further ordered that Defendant's motion to dismiss (ECF No. 13) is granted. Dismissal is with leave to amend because the Court cannot find that amendment is futile. Thomasson must file her amended complaint curing the deficiencies identified herein within 15 days of the date of this Order—by May 28, 2026. Failure to do so will result in dismissal of this action with prejudice.

DATED THIS 13th Day of May 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

6